No. 12,436.

## McLEAN *v.* HESS ET AL.

FRAUDULENT CONVEYANCE.—*Husband and Wife.*—*Debtor and Creditor.*— *Consideration.*—A conveyance by one person to the wife of another, will not be set aside as fraudulent against creditors of the latter and subjected to their claims, where he pays no part of the consideration although the purpose of all the parties was to put the property beyond the reach of such creditors.

SAME.—*Insurable Interest.*—*Payment.*—Although property was conveyed to the wife to defraud her husband's creditors, yet, if it is insured for the wife's benefit, she is entitled to the avails in case of loss, and payment by her for the property out of the insurance money does not constitute payment by the husband.

From the Marion Superior Court.

*V. Carter*, for appellant.

*R. O. Hawkins* and *A. Daggy*, for appellees.

ZOLLARS, J.—The evidence tends to establish the following facts: In 1881 one George W. Gibson was the owner of a mill property in Boone county. After some negotiations he agreed to sell it to Thomas S. McLean, the husband of appellant, for the sum and price of sixteen hundred dollars. The last negotiations were between Gibson and appellant and her husband. It was then determined by all of the parties that the deed should be made to appellant. The object on the part of appellant and her husband was to put the property beyond the reach of Mr. Daggy, to whom the husband was indebted. Gibson's object.was the same, as he feared that if the husband should take the title, Mr. Daggy would take the property, and he, Gibson, would thus lose the amount for which he was selling the property. At that time the husband, Thomas S. McLean, was insolvent, and had no property out of which anything could be made by execution.

The deed for the property was made to appellant. Nothing was paid to Gibson at the time, and nothing has at any time been paid by appellant's husband, unless the facts hereinafter stated show payments by him.

Appellant and husband executed a note to Gibson for sixteen hundred dollars, as it was agreed they should do. They also agreed to give him a mortgage upon the property to secure its payment, but after appellant got the deed she refused to execute the mortgage.

Appellant and husband also agreed to have the property insured for Gibson's benefit. He furnished them money with which to pay for the insurance. A policy of insurance was procured, but in favor of, and payable to, appellant.

Gibson had agreed with appellant's husband to furnish him money with which to operate the mill. The mill was for a time operated by the husband and his and appellant's son, in the name of McLean & Son. During this time Gibson furnished money to the husband, which was used in buying wheat, etc.

The mill burned in 1883. At that time no part of the purchase-price had been paid to Gibson. He sought to have the insurance policy assigned to him. Appellant declined to do so, and collected thereon from the insurance company seventeen hundred and seventy dollars. When the mill burned, the boiler and engine, and some other machinery, of the value of $600, were saved. These appellant and her husband offered to Gibson in payment of his note. It was finally agreed that they should be shipped to Indianapolis in the name of Gibson and sold. The husband, however, shipped them in his own name. Finally, in settlement of Gibson's note, appellant gave him $950 of the insurance money, and her son conveyed to him a house and lot. While the boiler and engine, etc., were at Indianapolis, and before appellant's husband had consummated a sale of them, Mr. Daggy commenced a suit in attachment against him, and they were taken by the sheriff, Hess, upon a writ of attachment, as the property of the husband, Thomas S. McLean.

Appellant replevied the property from the sheriff. To that action Mr. Daggy became a party, and made the defence that the mill property, of which the machinery in question was a

part, was purchased and paid for by Thomas S. McLean, the husband, and that without any consideration, and for the purpose of defrauding his creditors, especially Mr. Daggy, he caused the property to be conveyed to appellant, she participating in the fraud.

It is provided by sections 2974–5, R. S. 1881, that where a conveyance is made to one person, and the consideration therefor paid by another, the same shall be presumed fraudulent as against the creditors of the person paying the consideration. The undisputed testimony is, that Thomas S. McLean has paid no part of the purchase-money to Gibson. Gibson furnished " to them " the money with which to procure the insurance, and " they used the money, not having it (the property) insured " in his name.

The insurance was taken in appellant's name. However fraudulent the purpose may have been in having the property conveyed to her, that policy belonged to her. However fraudulent the conveyance to appellant may have been, she had an insurable interest in the property. The insurance was taken in her name; the policy was hers, and the proceeds thereof can not be taken from her by the husband's creditors. *Pence* v. *Makepeace*, 65 Ind. 345; *Lerow* v. *Wilmarth*, 9 Allen, 382; *Nippes's Appeal*, 75 Pa. St. 472; *Bernheim* v. *Beer*, 56 Miss. 149.

It is clear, therefore, that the $950 of the insurance money paid upon the purchase-money note was paid by appellant, and not by her husband. The house and lot conveyed to Gibson was the property of her son, and not of the husband. Thus it appears, that no part of the consideration for the conveyance of the mill property was paid by appellant's husband. This being so, it is difficult to see how Mr. Daggy, or any other creditor of the husband, could or can be injured by the conveyance to appellant, or by any fraudulent purpose therein. There are sometimes injuries without remedy, but in a case like this, the law will not afford a remedy where there is no injury.

No property or money of the husband went into the property purchased from Gibson. It is not shown that it was in any way increased in value by any skill or labor of the husband. Mr. Daggy is in no worse condition, as respects his debt against the husband, than he would have been had the conveyance not been made to the wife.

It is the settled law, we think, that a conveyance will not be set aside, nor the property conveyed be subjected to the payment of the debts of the fraudulent debtor, where it appears, as it does appear here, that none of his property or money has gone into the property so conveyed. *Fulton* v. *Woodman,* 54 Miss. 158; *Bernheim* v. *Beer, supra; Colgate's Executor* v. *Colgate,* 23 N. J. Eq. 372; *Farnham* v. *Clements,* 51 Maine, 426; *Leonard* v. *Barnett,* 70 Ind. 367; *Sherman* v. *Hogland,* 54 Ind. 578; *Eagan* v. *Downing,* 55 Ind. 65; *Evans* v. *Nealis,* 69 Ind. 148; *Irwin* v. *Ivers,* 7 Ind. 308.

It is not a question of conflict in the evidence here. There is a total lack of evidence to make a case against appellant, such as the law requires in order to take the property and apply it to the payment of the husband's debts. The judgment must, therefore, be reversed. It is accordingly reversed at appellees' costs, and the cause remanded with instructions to the court below to sustain appellant's motion for a new trial.

Filed May 25, 1886.