CASE 59—PETITION EQUITY—APRIL 16.

## Spalding, Etc. v. Miller.

APPEAL FROM MARION CIRCUIT COURT.

1. INSURANCE BY LIFE TENANT—RESULTING TRUSTS.—Where a life tenant insures his life interest in the property for an amount equal to the value of the fee without intending thereby to protect the remainderman, no trust results for the benefit of the remainderman, either in the whole amount, or in that part in excess of the value of the life estate.

LAFE. S. PENCE FOR APPELLANTS.

1. Where there is a total loss by fire and the interest of the life tenant is less than the amount of the insurance, the latter should be used in rebuliding, or else go to the remainderman, reserving the interest or income thereon to the life tenant. Bispham's Equity, chap. 3, p. 133; Perry on Trusts, vol. 1, p. 134; 151 Pa., 607; Haswell's Exor. v. Shippen, 10 Leigh, 558; Clyburn v. Reynolds, 9 S. E. Rep., 980; Paper Co. v. Langley, 22 S. C., 129; 8 Iredell's Equity Reports, 99; Green v. Green, 27 S. E. Rep., 952.

2. The fixing of Miller's homestead right in the action to which he was a party is conclusive as to the value thereof and can not be altered or changed. 7 Bush, 664; 10 Bush, 412; 12 Bush, 16; 5 Dana, 13.

J. P. THOMPSON FOR APPELLEE.

1. Miller, as life tenant, had an insurable interest in the property insured. Franklin Fire & Marine Ins. Co. v. Drake, 2 B. M., 47; Hartford Ins. Co. v. Haas, 87 Ky., 531.

2. It can not be claimed that Miller acted as agent or trustee for the remainderman in any sense; the policy itself and the indorsement thereon show conclusively that he effected the insurance on his own interest alone.

JUDGE DuRELLE DELIVERED THE OPINION OF THE COURT.

In 1890, appellee Miller was awarded a homestead in his wife's land, consisting of some ten acres of land and the buildings thereon. In August, 1891, he took out a policy of insurance, running for three years, with the Phoenix Insurance Company, of Hartford, for $4,000, of which $850 was on household furniture, and the remainder on the house, outbuildings, hay, etc. A slip was attached to the policy as part thereof, on April 30, 1892, signed by the agent of the company, stating that "The interest of the assured in the land on which the dwelling and other buildings are situated is an estate during his natural life." In 1892, the appellant Spalding bought the remainder interest in the property. In October, 1892, appellants took out a policy of insurance with the same company, running one year, for $1,000, it being stated in the policy that "This policy is subject to the homestead of James M. Miller, and subject to the lien of unpaid purchase money." Appellants claim that after the expiration of this policy it was renewed, but subsequently cancelled by the company, and T. B. Spalding states that the agent told him

they were amply protected by Miller's policy. The agent, however, states that he refused to renew the policy, and informed Spalding of Miller's policy, and told him that if it was endorsed in the usual form it would protect his interests; but that he did not make the statement claimed by Spalding. On August 1, 1894, the house and part of the outbuildings, upon which the insurance amounted to $2,500, were destroyed by fire. The Spaldings asserted some claim to a part of this insurance, but it was paid, together with the insurance upon the furniture, etc., to appellee; and appellants brought suit against the company and Miller, claiming in the original petition that Miller, in obtaining the insurance, was the trustee, bailee and agent of the plaintiffs; that the fee simple of the property did not exceed in value $2,750, and that Miller's homestead rights therein did not exceed $833.80. They prayed judgment against both defendants for $1,916.20. By an amended petition, they prayed that Miller should be compelled to expend the money received from the company in erecting new buildings, or to pay it over to them (appellants), or required to execute bond for the payment of the entire sum at his death.

A demurrer by the Phoenix Insurance Company was sustained, and properly, as it had paid the amount of the insurance to the person whose interest it had agreed to insure.

Miller was required to answer, and upon final hearing the trial court dismissed the petition.

It is very earnestly contended by counsel for appellants that the property in which Miller was allowed a home-

stead was, by that judgment, valued at $1,000, and such valuation was conclusive as to the value of the property; that he ought not to be allowed to put himself in a position in which he would have no motive to properly preserve and care for the estate, by obtaining insurance to the full value of the fee simple estate therein; and further, that where a total loss results from fire, and the interest of the life-tenant is less than the amount of the insurance, then the insurance recovered should be used in rebuilding, or should go to the remainderman, reserving the interest to the life-tenant during his life.

As to the first two propositions stated it may be suggested, that they would have more weight if urged by the insurance company in answer to a suit by the life-tenant for the amount of the insurance. It seems quite probable that Miller received far more than the value of his life-estate in the property, and that if the company had resisted payment of the policy (which was issued before the act of December 3, 1892, "to regulate the liability of insurance companies in this State in certain cases"), it would have been successful in greatly abating the amount of the claim. But the question here presented is, whether in a case where the life-tenant has insured his life-interest for an amount equal to the value of the fee, a trust results, either in the whole amount or in that part of it in excess of the value of the life-estate, for the benefit of the remainderman.

It is conceded that if Miller in insuring his life-estate had not placed an excessive value upon it, he would be entitled to the entire insurance. What ground, there-

fore, has the remainderman to complain that Miller, by placing an excessive valuation upon his interest, obtained from the company a greater sum than in equity and good conscience he was entitled to. It is not pretended that there was any actual agency or express trust in Miller for the benefit of the remaindermen, or that he acted as their agent in obtaining the insurance; on the contrary, all the circumstances tend to show directly the opposite. The insurance was taken out before these remaindermen had any interest in the property. By the alteration in the contract of insurance, Miller expressly limited the interest insured to his life-estate. No payment of any part of the premium was made, or offered to be made, by the appellants.

But appellants claim that a trust resulted for the benefit of the remainderman, because of the excessive insurance obtained by the life-tenant upon his interest. There are cases in which it has been held that where a life-tenant intended to insure not only his own interest, but that of the remainderman, but the contract was, by the fault of the agent of the company, erroneously drawn for the benefit of the life-tenant alone, he could recover the entire insurance, but by assuming to insure the remainder as well as the life estate, he became trustee for the remainderman as to the excess of the judgment over the value of the life-estate. To this class belongs the case relied on by appellants of Welsh v. London Assurance Corporation (151 Penn. St., 618), where it was held that it was the intention of the party to insure the whole property, for the benefit not only of the plaintiff as life-tenant, but also

of the remainderman. That case followed Miltenberger v. Beacom (9 Penn. St., 198), in which it was said:

"The contract of assurance, like other contracts, may be effected by the agency of a third person, without the authority of the person to be benefited, if he subsequently recognize it. It is true that to enable the beneficiary to sue upon it directly he must be expressly named."

But in the case at bar every circumstance appearing in the record tends to rebut the presumption that Miller, in effecting the insurance, intended to do so for any other than himself. Under the contract into which he entered after obtaining the advice of counsel he, and he only, was to be the insuree or beneficiary of the insurance contract. There was no assumption of agency. There is not a scintilla of evidence tending directly or indirectly to show that he intended to act for the benefit of any other. The trust for the remainderman's benefit, if any exist, must be a resulting trust, arising from a contract which was either actually or constructively fraudulent. But we have searched in vain for any case holding a resulting trust to arise in favor of a person not injured by the actual or constructive fraud, excepting in the South Carolina courts, which seem to treat the sum paid the insuree as the proceeds of a sale would be treated, to be held in like proportion, and upon the same conditions, as the property itself had been held. A case referred to and much relied on by appellants is Green v. Green (27 S. E., 953), in which the remainderman brought suit against the life-tenant to declare a trust for their benefit in the amount received by the life-tenant as insurance upon the buildings insured

for her benefit. The court there held, that in case of total destruction of insured property the fund from the insurance policy was substituted for the property; that the life-tenant was entitled to the interest for life, and the fund after her death was payable to the remainderman, or should be used in rebuilding. This case, and the case of Clyburn v. Reynolds (31 S. C., 118), were based upon the idea that the life-tenant was the implied trustee for the remainderman. The court there referred to the case of Haxall v. Shippen (10 Leigh, 536), which seems to us not to be applicable, it being a case in which the testator obtained the insurance and died, having provided a life-estate in the property insured, with remainder over. The property having been destroyed by fire after his death, the question arose as to the disposition of the insurance money, and it was held—and we think properly—that the life-tenant took in the insurance money the same interest which he had in the property destroyed. Graham v. Roberts, 8 Iredell, 99, was an exactly similar case and is also inapplicable.

Nor do we think the citation from 4 Wait's Actions and Defenses, page 22, applicable to the Green case or the case at bar. It was there said, in discussing insurable interests, in reference to actions by the insuree against the insurer, that it is against public policy and expressly forbidden for a person to insure that in which he has no interest. "Such an insurance would be a direct inducement to the insured to destroy the thing insured, and when the insurance is beyond the value of the interest at stake the effect is the same, for, although the amount of the loss

only could be properly recovered, there will be a hope of getting more. It is also in its nature a gambling contract where the party has no real interest at stake, and the courts will not give relief upon it."

The doctrine there laid down, in which we fully concur, is to the effect that no one should be allowed to secure insurance beyond the value of his interest in the property insured. It is misapplied to the question of what disposition is to be made of such insurance when collected.

The better doctrine, in our opinion, is laid down in the case of Harrison v. Pepper, from Massachusetts (44 N. E., 222.) In that case, which was, like this, a suit by the remainderman against the life-tenant, after holding that the latter had an insurable interest in the property, the court said:

"If the amount received by the plaintiff did not exceed the value of her interest, then it is clear that the plaintiff has no right in equity to any portion of it. Reitenbach v. Johnson, 129 Mass., 316; Martineau v. Kitching, L. R. 7 Q. B., 436; Stilwell v. Staples, 19 N. Y., 401. But if we assume that the sum paid represents the total value of the dwelling house, and exceeds the value of the defendant's interest, and that the bill finally alleges this, still we do not think that the plaintiff is entitled to recover.

\*　　　\*　　　\*　　　\*　　　\*　　　\*

"We have been referred to no case in which it has been decided that the neglect of the life-tenant to insure is to be regarded as in the nature of voluntary or permissive waste, though it has been held that the failure to pay

taxes is (Stetson v. Day, 51 Me., 434); but that, manifestly, stands upon different ground.

\*         \*         \*         \*         \*         \*

"In the absence of anything that requires it in the instrument creating the estate, or of any agreement to that effect on the part of the life-tenant, we think that the life-tenant is not bound to keep the premises insured for the benefit of the remainderman.    Each can insure his own interest, but, in the absence of any stipulation or agreement, neither has any claim upon the proceeds of the other's policy, any more than in the case of mortgagor and mortgagee, or lessor or lessee, or vendor or vendee. (Burlingame v. Goodspeed, 153 Mass., 24, 26 N. E., 232; Trust Co. v. Boardman, 149 Mass. 158, 21 N. E. 239; Insurance Co. v. Boyden, 9 Allen, 123; Warwicker v. Bretnall, 23 Ch. Div. 188; Leeds v. Cheatham, 1 Sim. 146; Rayner v. Preston, 18 Ch. Div. 1; Kearney v. Kearney, 17 N. J. Eq. 59, 71.)   The contract of insurance is a personal contract, and inures to the benefit of the party with whom it is made, and by whom the premiums are paid.    It is a contract of indemnity against loss.   The sum paid 'is in no proper or just sense the proceeds of the property.'  Lerow v. Wilmarth, 9 Allen, 382, 385; Insurance Co. v. Boyden, Id. 123; Wilson v. Hill, 3 Metc. (Mass.) 66; King v. Insurance Co., 7 Cush. 1; Insurance Co. v. Lawrence, 10 Pet. 507, 512.

\*         \*         \*         \*         \*         \*

Whether the amount of indemnity received by the defendant for her loss was more or less than the value of her interest can not affect the plaintiff; nor can the

defendant be converted into a trustee for the plaintiff by the mere fact that the amount which she received was equal to the full value of the house. It was paid to and received by her as indemnity for the loss which she had sustained, and, as already observed, does not stand in the place of the property insured.

\*          \*          \*          \*          \*          \*

"The plaintiff argues that sound public policy requires that money received by a life-tenant on a total loss by fire should be used in rebuilding, or should go the remainderman, reserving the interest to the life-tenant for life. This argument proceeds on the assumption that the proceeds of the insurance take the place of the property insured—a view which, as we have seen, is contrary to our own and other decisions. If the contract of insurance is one of indemnity to the insured for the loss sustained by him, it is difficult to see how a sound public policy could be subserved by holding that he shall use what belongs to him for the benefit of some-one else."

And this doctrine is in accordance with the principles underlying the decisions in our own State. Appellee had an insurable interest. (Franklin F & M. Ins. Co. v. Drake, 2 B. M. 47.)

In Hartford Insurance Co. v. Haas (87 Ky., 531), the insuree had a dower interest, and was also the owner of a lien note. It was held that she had an insurable interest, and that the nature of her interest was known to the agent, though not disclosed by the policy, which appeared to be upon the entire fee. In a suit to recover on the

policy, defense being made on the ground that her actual interest was not disclosed, this court held (Judge Pryor delivering the opinion), that the statement embodied in the policy should be regarded as the act of the insurer and that the interest which the life-tenant had in the insured property was secured by the policy, but that the extent of that interest was another question, and she could recover only to the extent of her interest in the house or building destroyed.

For the reasons given, the judgment is affirmed.